## EMILY PELTIER vs. CHARLES PELTIER.

Where a defendant is in contempt, he cannot move to set aside proceedings; but where there First Circuit.
is merely a failure on his part to comply with the requisitions of an interlocutory order,
he may move to discharge the order for irregularity.                                     Emily Pel-
                                                                                         tier
A feme covert connot file a bill against her husband without *pro chein ami.*            vs.
                                                                                         Charles Pel-
Where an injunction and *ne-exeat* were issued, May 31, 1836, and were returned served on  tier.
the 6th of June; and the subpœna was not issued until the 2d day of July following, it
was *held* to be irregular.

A court of chancery has no jurisdiction in a case where the bill is filed for alimony merely.

The bill, in this case, was filed May 31, 1836, in the supreme court of the terrritory of Michigan, in chancery sitting, and set forth that the complainant came into the territory of Michigan in the year 1834, and had resided in said territory ever since. That in the. month of January following, being then of the age of twenty years, was married to the defendant, who was then twenty-six years of age, or there abouts.

Soon after the marriage, and within one month, the defendant evinced angry feelings towards her, and abused and ill treated her, and frequently resorted to acts of violence upon her person. That in the month of November, 1836, complainant was confined and delivered of a male child, and when the child was not more than three weeks old, the defendant began to beat it and treat it with great barbarity; at one time pouring water over its face and continuing it until the infant's cries were hushed by strangulation. That this conduct was frequently repeated; and particularly in the month of April, 1836, he had treated the child with great cruelty; and had beat with great violence and inhumanly treated the complainant, and used the most violent threats towards her, and soon after abandoned her, and went from Port Huron, in the county of St. Clair, (where he then resided,) to the city of Detroit, and had not since returned to her.

The bill further set forth, that by reason of the shortness of her residence in the territory, she was unable to avail herself

of the statutory provision enabling persons resident three years in the territory, to procure divorces for the cause of cruel treatment, and that complainant had no means of support for herself and child, (who was then aged six months,) nor for their clothing, or to pay counsel fees, and that the defendant had adequate means for that purpose. That defendant had been applied to on behalf of complainant, to make some provision or allowance for the purposes aforesaid, and also for the education of the child; which he had refused to do.

The bill also set forth, that defendant had declared his intention to leave this country and go to Europe to reside, as soon as he could raise sufficient money to enable him to do so; and that he was then actually arranging his affairs for that purpose, and had threatened to take from her the child and carry it away with him.

The bill prayed that defendant be restrained by injunction from molesting the retreat and invading the retirement and privacy of complainant, or in any way intermeddling with her, and that defendant might be restrained from taking away from complainant, the custody and care of the child, or interfering with her management of the same, and that she might have the sole and absolute custody, care and management of the child; and that defendant be decreed to maintain and support complainant and the child, and to pay such allowance weekly, as should be found suitable and adequate for the maintenance and clothing of complainant, and also for the clothing, maintenance and education of the child, and that the regular payment thereof be secured; and for such reasonable sum to enable complainant to prosecute her suit as to the court should seem proper.

It also prayed for a writ of *ne-exeat*, to restrain defendant from departing the territory, and for a subpœna, in the usual form.

A writ of *ne-exeat*, directing security to be given in the sum of $5,000, and also the writ of injunction prayed, were allowed by the Hon. George Morell, one of the justices of the supreme court,

The injunction and *ne-exeat* were served on the defendant June 6, 1836.

At the same term, June 20, WOODBRIDGE and BACKUS filed the following motion:

WOODBRIDGE and BACKUS move that the injunction in the premises issued, be dissolved, and that said writ be set aside; and for reasons, show to the court here, the following, to wit:

1. For that the same is irregular.

2. For that the same is not sanctioned by any equity in the bill of complaint contained.

3. For that no bill of complaint is regularly filed nor exhibited in the premises.

4. For that the case made thereby is disproved by affidavits.

5. For that the subject matter of said writ, is not an appropriate nor legal subject for a writ of injunction.

6. For that the same issued without subpœna and improvidently.

They also move that the *ne-exeat* in said cause issued, be discharged, and the same writ be set aside.

1. For that the same issued improvidently and irregularly.

2. For that no definite sum of money is therein, nor in said bill, shown to be due, nor at hazard, either at law or in equity.

3. For that this honorable court has not jurisdiction of matrimonial causes, except for the purpose of granting divorce; and said bill neither presenting a case nor containing a prayer for such divorce, though the same purports to be a matrimonial cause. The subject matter of said writ and the aid sought to be obtained thereby, are illegal and incompetent.

4. For that said writ is not accompanied by a subpœna to answer.

5. For that no bill of complaint, by a competent party, is regularly filed in the premises.

6. For that the case presented therein is disproved by affidavit.

They also move that the bill of complaint in the premises, exhibited and filed, be dismissed:

First Circuit.

Peltier
*vs*
Peltier.

First Circuit.

Peltier
vs.
Peltier.

1. For that the said bill is exhibited and filed by Emily Peltier alone; whereas it appears, by the showing thereof, that said Emily is a *feme covert*, and in no wise competent in the law, to file said bill, except in the name of her *pro chein ami.*

2. For that this honorable court has no jurisdiction of the subject matter of said bill, and that no subpœna *ad respondendum* has been served thereupon.

At the same term, June 29, the supreme court granted an order, that the defendant forthwith pay into the hands of the register of the court, for the use of the complainant, the sum of $40, in order to enable her to defray the expenses in the prosecution of this suit; and also that defendant pay every week, from that day, into the hands of the register of the court, for the use, support and maintenance of complainant, the sum of $4, until the further order of the court.

A certified copy of said order, together with a subpœna to answer the bill of complainant, were served on defendant, July 27, 1836.

On the organization of the state government, this cause among others, pending on the chancery side of the supreme court of the territory, was transferred to the court of chancery, established under the state government, and was continued by consent of parties until the February term of the court of chancery; when WOODBRIDGE renewed the motion to dissolve the injunction and set aside the writ; and that the *ne-exeat* be discharged and the writ set aside; and that the bill be dismissed for irregularity and want of jurisdiction; and also moved that the order made June 29, 1836, be discharged, vacated and rescinded, on the ground that the same was made unadvisedly, improvidently and *ex parte.*

At the same term, A. D. FRAZER, solicitor for complainant, on filing the affidavit of John Winder, (who was on the 29th day of June, 1836, register of the supreme court of the territory, and now register of the court of chancery,) that the order made June 29, 1836, by the supreme court, had not been complied with; and that no money had been paid into his hands by defendant for the use of complainant, to defray the

expenses of this suit or for alimony, moved that defendant be committed for a contempt of court for not complying with the order.

Both motions came on to be heard at the same time.

The following brief, being the same that WOODBRIDGE submitted when he appeared in the cause as *amicus curiæ*, to resist the motion on which the order of June 29, 1836, was granted, was used and submitted on the arguments of these motions, by

WM. WOODBRIDGE, solicitor for defendant.

WOODBRIDGE, as *amicus curiæ*, moves to dissolve injunction, discharge *ne exeat,* and dismiss the bill for irregularity and want of jurisdiction, and resists the motion of complainant for the same reasons; and he insists that no bill and no parties are *regularly here,* and therefore it is not competent to make an allowance.

*First.* It is not competent for a *feme covert* to file a bill in her own name. If the bill be against her husband, ˳she must sue by her *pro chein ami.* This is a rule so perfectly established and so familiarly known, that no authority can be necessary to support it. If an application for a *divorce* can be sustained in the name of a married woman, (without a *pro chein ami,*) it is because of an express provision of the *statute* in that regard. *This* is not an application for a divorce. (*See Wood* vs. *Wood,* 2 *Paige R.,* 457; *Mitford,* 153; *Cooper,* 28, 163; *Clancy, on the rights of women,* 358, 6; 2 *Kent's Com.,* 137.)

*Second.* It is irregular to cause *any* action upon a bill, even to issue injunction, unless simultaneously there be a *subpœna* to answer; and can such an order pass without an appearance? (*See Parker* vs. *Williams,* 4 *Paige,* 439; *Attorney General* vs. *Nichol,* 16 *Ves.,* 338; *Eden,* 35; *Fellows* vs. *Fellows,* 4 *Johns. Ch. R.,* 25; *Eden,* 38, 232.)

*Third.* This Court has no jurisdiction of the subject matter of the bill. The essential scope of the bill is to obtain a *supplicavit* and alimony. Now, as to a *supplicavit,* a court of chancery cannot exercise jurisdiction of it; at least, unless that

matter arise *incidentally* in the course of the exercise of another and a principal object of the suit. (*Codd* vs. *Codd*, 2 J. C. R., 141.)

For the rest, the judicial officers of the law in the territory are abundantly competent, in the ordinary administration of the law, to furnish all the relief and protection necessary. (2 *Har. Cha.*, 168; *Codd* vs. *Codd*, 2 J. C. R., 141; *Head* vs. *Head*, 3 *Atk.*, 550.)

Of alimony this Court can have no jurisdiction, except so far as *incident* to the power of granting a divorce. (*Lewis* vs. *Lewis*, 3 *Johns. Ch, R.*, 519; *Mix* vs. *Mix*, 1 *Johns. Ch. R.*, 108; 1 *Fond.*, 96; *Head* vs. *Head*, 3 *Atk.*, 547; 2 *Chit. Pra.*, 434–5, 462–3; 1 *Mad.*, 305–6–7—*note.*)

Or, unless it be applied for upon the footing of an agreement of separation, and allowance of separate maintenance duly entered into; and even then it would be exceedingly doubtful, unless some third person had acquired an interest, or the agreement had been entered into with some third person. (*Bullock* vs. *Menzies*, 4 *Ves., Jr.*, 799;) or where it is claimed to accrue from a trust fund which chancery only can touch: and, as a general rule, chancery has no jurisdiction in matrimonial cases. (*Legard* vs. *Johnson*, 3 *Ves., Jr.*, 351.)

Chancery has never established a separation, except in pursuance of a previous agreement, and with great reluctance even then. (1 *Mad.*, 305–6–7:) Nor, of course, does it grant alimony, as a principal object of relief.

*Fourth.* But if alimony were regularly claimed, as a measure of relief, *purely incidental* to some other principal prayer, still the party petitioning for it, should apply in due form. How can the court regulate the amount? Suppose the defendant were insolvent? Suppose worth $50,000 per annum, would the rate of allowance be the same? If the application were *secundum artem*, the party would file a petition, give notice of it, and file also an "allegation of faculties." This allegation of faculties, being answered by respondent under oath, would exhibit a true state of his funds and capacity to pay. Nor will counsel fees be allowed by the court where

there is jurisdiction, except *ex necessitate*. (3 *Johns. Cha.*,
519.)

*Fifth.* The bill is not, *in contemplation of law*, sworn to at all. A wife cannot be allowed her oath against her husband, in any case, as a general rule, except where she swears articles of the peace against him, or where personal violence is committed upon her; and, therefore, neither injunction, *ne-exeat*, nor *supplicavit*, are regular. (2 *War. Cha.*, 161; *Sedgwick* vs. *Watkins*, 1 *Ves., Jr.*, 49.)

But it is anticipated that the court will consider the motion to *dissolve* the injunction, *discharge* the *ne-exeat*, and dismiss the bill at the same time, and for the reasons on file; as the consideration of the whole matter involved in this motion, almost, is necessarily involved in the motion submitted by complainant. Writs of *ne-exeat*, effecting the rights of personal liberty, are never granted, except reluctantly. (*Woodward* vs. *Schatzell*, 3 *J. C. R.*, 412.) Never, except a *specific sum* appear manifestly due, and in imminent danger of loss unless it be allowed, and which courts of law are *incompetent* to save. (2 *War. Cha.*, 161; 1 *Ves., Jr.*, 49, 94; 2 *Atk.*, 210.) Here no *sum* has been decreed, or sworn to. If there rest *any* liability on the part of the husband to pay for the support of the wife, it is a liability at law; let him be sued for it.

The injunction is equally untenable. The bill is irregularly filed. It is as if there were *no* bill; for, (unless, perhaps, for divorce, and this is not,) the wife *cannot* file her bill without her *pro chein ami*, and the injunction must be dissolved, for there is *no* subpœna to answer. The subject matter and scope of the injunction is without precedent and illegal. The complainant *meant* to pray for and obtain a *supplicavit*, not an injunction. But *it is by statute*, that in England the chancellor exercises this power; and, I apprehend, never, even there, except in a matter *incidental* to the main object of the suit. *Such* an injunction interferes with the *marital rights* and *duties* of the husband in a way not to be tolerated. But if life were in danger, a justice of the peace would bind the party to his good

behavior, *leaving* the wife, where the *law* leaves her, in the custody and under the protection of the husband.

The bill should be dismissed, because the court has no jurisdiction of its subject matter.

ALEXANDER D. FRAZER for complainant.

The complainant contends that the general rule is, that the party must clear his contempt before he can be heard. (*Vowles* vs. *Youngs*, 9 *Vesey*, 173; *Hewitt* vs. *McCurtney*, 13 *Id.*, 560; *Anon.*, 15 *Id.*, 174.)

On a question whether the defendant could, before his contempt were cleared, though he offered to pay all the plaintiff's demand, ordered that he should bring before the master, principal, interest and cost, and then be at liberty to move to discharge sequestration. (*Lord Wenman* vs. *Osbaldiston*, 2 *Brown P. C.*, 142.)

Though an injunction be irregularly obtained, it must be obeyed or the party is in contempt. (*Woodward* vs. *King*, 2 *Ch. Ca.*, 203, 127; *Partington* vs. *Booth*, 3 *Mer.*, 148.)

Alimony has been decreed to a wife without a divorce, where she was compelled to leave the husband from ill usage, although she had not been beat or turned away. (1 *Equity Digest by Barbour and Harrington*, 266; *Rhume* vs. *Rhume*, 1 *McCord, Ch.*, 205; *Thornberry* vs. *Thornberry*, 2 *J. J. Marshall*, 324; *Denton* vs. *Denton*, 1 *Johnson. C. R.*, 364; *Hewitt* vs. *Hewitt, Blands. Ch. Rep.*, 101; *Jelineau* vs. *Jelineau*, 2 *Desaus*, 45;) and if there be no precedent, the court will make one. (*Idem*, 50; *Devall* vs. *Devall*, 4 *Desaus*, 79; *Anon. Id.* 94; *Taylor* vs. *Taylor, Id.*, 167; *Id.*, 183.)

Court of chancery has jurisdiction in all cases of alimony, and defendant will be committed *until he comply* with the decree. (*Purcell* vs. *Purcell*, 4 *Hen. and Munf.*, 507; *Id.* 515; *Id.* 517; *Id.*, 520; *Anon.* 1 *Hayne*, 347.)

Courts of chancery, in this country, have authority to decree alimony independent of any legislative enactment; temporary alimony, and money to carry on the suit, is a matter of course. (*Fishli* vs. *Fishli*, 2 *Litt.* 337; *Butler* vs. *Butler*,

4 *Id.*, 202; *Wright* vs. *Wright*, 1 *Edw.*, 62; *Smith* vs. *Smith*, *Id.* 255; *Stanford* vs. *Stanford, Id.*, 317.)

An injunction was appropriate to prevent intercourse or molestation on the part of the husband. (*Warter* vs. *Yorke*, 19 *Vesey*, 454.)

It is competent for a *feme covert* to institute suit without a *pro chein ami;* and the affidavit of the wife may be received against the husband and will authorize the granting of an injunction and *ne-exeat.* (*Kirby* vs. *Kirby*, 1 *Paige*, 261; *Pyle* vs. *Cravens*, 4 *Litt.*, 18.)

WOODBRIDGE in reply.

It is now objected that the defendant is excluded from this motion because counsel say, " he is in contempt for not obeying the order now sought to be set aside."

It is admitted that when a contempt is "fixed" upon one, he cannot, in general, move until the contempt " is purged."

But even this rule applies rather to appeals to the " discretion"—that is, to the *favor* of the court, and does not and *cannot* preclude the enforcement *of mere* right. (*Johnson* vs. *Pinney*, 1 *Paige*, 646; 7 *Paine's Rep.*, 58; 9 *Whea.*, 868.) The *nulity* of an order, &c., may be always shown.

But in this case, there is no *contempt fixed.* At the first practicable moment, the motion is made to set aside the order for irregularity, &c., and before any movement of complainant.

But to this moment, nothing under that order, is done by complainant to bring us in contempt. An order or a decree, (and they both stand upon the *same* footing) to pay money, is to be enforced by " execution," and in that way only. (1 *Har. Cha.*, 442 *to* 445; 2 *Har. Cha.* 141–2; *New Pra.* 194–5 ; " orders on decrees," *Hind. Cha.* 429; *New Pra.* 70–1.) And especially where the order is to pay money, the course is by execution. (2 *Mad., new ed.*, 402–4; 8 *Ves.* 381; 2 *Mad., old ed.*, 305.)

And until complainant move, by execution upon the order against us, it *cannot* be enforced. In New York there is an express statutory provision for the enforcement of orders, &c., by serving *copies*, but *we* have no such statutory provision.

FirstCircuit.

Peltier
vs.
Peltier.

Another matter is worthy of note; that is, that *Winder's* affidavit was not filed until *this* term. And if our situation in this regard brings us within the rule alluded to, then *any suggestion* of contempt, without affidavit, will, at any time be found to be a sufficient apology for *suppressing* all claim of legal and constitutional right. But if the party were technically in contempt, still it is competent to set aside the *order* which is rendered against him for irregularity, even; much more for nullity. (3 *Bar. and Harr. Eq. Dig.*, 257; *Green* vs. *Green*, 2 *Sim.*, 394; 2 *Con. Cha.*, 540; 4 *Con. Cha.*, 528; *Jenkins* vs. *Wild*, 2 *Paige*, 394.)

And this doctrine is practically supported by the numerous New York cases. For in all them, perhaps—in most of them certainly, laborious investigations are gone into to show the regularity of the proceedings, or the contrary; and all clearly supporting the proposition that where the irregularity is so glaring as to amount to nullity, this fact may be shown. (*Higbie* vs. *Edgarton*, 3 *Paige*, 253; *Sanford* vs. *Brown*, 4 *Paige*, R., 360; *Sullivan* vs. *Judah*, *Id.* 444; *Osgood* vs. *Johnson*, 3 *Paige*, R., 195; *People* vs. *Spalding*, 2 *Paige*, 329.) And these, apparently, contain the most unfavorable aspect, as against us, which the doctrine will bear. And the mere failure to comply with an interlocutory order, *does not of itself* place the party in contempt, nor preclude him from showing its irregularity. (*Hill* vs. *Bissell*, *Mose. R.*, 259; 1 *How. Pra.* 369.)

THE CHANCELLOR.—These are cross motions, and must necessarily both be considered at the same time.

When a defendant is in contempt, he cannot move to set aside proceedings; but when there is merely a failure on his part to comply with the requisitions of an interlocutory order, he may move to discharge the order for irregularity. (*Hill* vs. *Bissell*, *Mose. R.*, 259.)

Here no contempt is fixed, and the defendant moves to set aside the order at the earliest opportunity. Orders of this kind are usually enforced by execution, and a mere failure to comply with the requisitions of such an order, is not such a

contempt as will preclude the party from moving to discharge
the order and set aside the proceedings for irregularity.

The proceedings in this case seem to have been irregular throughout. The bill was filed by a *feme covert* without *pro chein ami*, and was, therefore, improperly before the court. (*Wood* vs. *Wood*, 2 *Paige R.*, 454; *same case on appeal*, 8 *Wend.*, 357; *Mitford*, 153; *Cooper*, 163.)

The injunction and *ne-exeat* were issued May 31, 1836, returnable on the first Monday of June following, and were served June 6, 1836. The subpœna was not issued until the second day of July, 1836. This was clearly irregular. (*Parker* vs. *Williams*, 4 *Paige R.*, 439; *Attorney General* vs. *Nichol*, 16 *Ves.*, 338.)

The next question that arises, is, as to the jurisdiction of the court.

The bill in this case is filed, not for a *divorce*, but for *alimony* merely.

It appears from the authorities cited by the counsel for the complainant, that the courts of South Carolina have entertained bills of this kind; but they have usually been to carry into effect some marriage contract, or where a trust property was involved. I can find no other case where the jurisdiction has been sustained when the question has been raised. In the case of *Hewitt* vs. *Hewitt*, 1 *Bland R.*, 101, the jurisdiction was not questioned, the facts were admitted, and the whole matter was submitted to the court. The cases referred to in the note to that case, are too indefinite to entitle them to any weight as authority.

The whole current of authorities goes to show that courts of chancery have never entertained jurisdiction in cases of this kind, except in aid of some other court, or to carry into effect a marriage contract, or in the execution of a trust. (*Peame* vs. *Lisle*, *Ambler R.*, 75; *Perry* vs. *Perry*, 2 *Paige*, 501.)

In England, when the court of chancery succeeded to the jurisdiction of the *spiritual courts* during the usurpation, it entertained suits of this kind, but not since the restoration. (*See*

First Circuit.
Peltier
vs.
Peltier.

*Head* vs. *Head,* 3 *Atk.,* 551; *Watkyns* vs. *Watkyns,* 2 *Atk.,* 98; *Fonb. Eq.,* 98, *note n.*)

In the case of *Codd* vs. *Codd,* 2 *J. C. R.,* 141, the bill prayed for a writ of *supplicavit* to protect the person of the petitioner, and her property and children from insult and injury, pending the suit, and chancellor *Kent* refused the writ, saying, "Why should not the party apply to a justice of the peace to bind the other to good behavior?"

The cases cited in *Desaussure's* equity reports of South Carolina, seem to be a departure from principle, and cannot, therefore, be regarded as authority in this case. If it is intended that courts of chancery should take jurisdiction of this class of cases, that jurisdiction must be given by law. I am satisfied that, exclusive of any statutory provision upon the subject, this court has no jurisdiction to entertain proceedings of this kind.

The orders must be discharged and the bill dismissed.