DETERMINED IN THE

# COURT OF ERRORS AND APPEALS,

OF THE

## STATE OF NEW JERSEY,

AT MARCH TERM, 1854.

---

### DEN EX DEM. JONATHAN ELLE v. JOHN B. YOUNG.

1. A devise in these words, "The remainder of my real estate I order my executors to sell or dispose of as they may think best, and to divide it equally among my two children," will give the fee to the testator's children until disposed of by the executors; and a division of the land by the executors between the two children will vest each with the fee of the share set off to him.

2. A writ of error brought by a plaintiff in the suit to review a judgment of non-suit at the trial, sustained, and judgment reversed.

---

This cause was tried in the Morris County Circuit Court, and upon the trial the circuit court ordered the plaintiff to be non-suited. To this ruling a bill of exceptions was taken, and the cause removed by writ of error to the Supreme Court. That court upon hearing the case upon the merits, affirmed the judgment of the circuit court. 3 *Zab.* 478. To review this decision of the Supreme Court a writ of error was brought removing the proceedings before this court.

The question in the cause was raised upon the construction of the sixth clause in the will of Rachel Batson under

which the lessor of the plaintiff, who was the natural son of the testatrix and one of the devisees in the same, claimed title. That clause and the partition or division made of the lands by the executors of the will between the two children or devisees, are set forth in the report of the case in the Supreme Court. 3 *Zab.* 478.

The cause was argued by Mr. *Whelpley*, for the plaintiff in error, and Mr. *Dayton*, for the defendant in error.

VALENTINE, J.   The question to be decided by this court arises upon the residuary clause, or sixth item of the will of Rachel Batson, which is as follows:

"The remainder of my real and personal estate I order my executors to sell or dispose of as they may think best in their discretion, and to divide it equally among my two children, namely, Jonathan and Hannah."

The lands in controversy in this suit were part of the remainder of her estate not previously disposed of by the will.

The executors were Jonathan Elle and Joseph Saunders, husband of Hannah. Jonathan and Hannah were illegitimate children of Rachel Batson, the testatrix.

By deed, dated December 1st, 1846, executed by and between Jonathan Elle and wife and Joseph Saunders and wife, the executors, made division of the land between Jonathan and Hannah. This deed recites at length the will, and particularly the residuary clause or sixth item, and proceeds as follows: "Now know all men by these presents, that we, the parties aforesaid to these presents, by virtue of the power and authority to us given, in and by the said will aforesaid, have proceeded *to make division* of the real estate devised in the said will aforesaid, as follows: It is agreed that the said Jonathan, his heirs, executors, do have, hold, occupy, possess, and enjoy, according to the true intent and meaning of the said testatrix aforesaid, the equal one-half of the farm whereon Joseph Saunders now lives, situate in, &c., &c., being the remainder of the real estate of said tes-

tatrix, which said one-half has been set off and marked by the following metes and bounds, to wit, &c., &c., with like language as to Hannah's share.

The lessor of the plaintiff claimed title to the premises described in this deed as set off to Jonathan under this item of the will, and the deed made in pursuance of it. The circuit court decided that he had no title by either, and nonsuited the plaintiff; and the Supreme Court in Error affirmed the judgment.

The writ of error to this court presents for decision two questions :

I. The true construction of this residuary clause.

II. The effect and operation of the deed before recited.

" In the construction of wills the most unbounded indulgence has been shown to the ignorance, unskillfulness, and negligence of testators ; no degree of technical informality or of grammatical or orthographical errors ; nor the most perplexing confusion in the collection of words and sentences, will deter the judicial expositor from diligently entering upon the task of eliciting from the contents of the instrument the intention of its authors, the faintest traces of which will be sought out from every part of the will, and the whole carefully weighed together, but if after every endeavor he finds himself unable, in regard to any material fact, to penetrate through the obscurity in which the testator has involved his intention, the failure of the intended disposition is the inevitable consequence. Conjecture is not permitted to supply what the testator has failed to direct, for as the law has provided a definite successor in the absence of disposition, it would be unjust to allow the rights of this ascertained object to be suspended by the claim of any one not pointed out by the testator with equal distinctness. The principle of construction here referred to has found expressions in the familiar phrase, that the heir at law is not to be disinherited unless by express words or necessary implication." *Jarman on Wills* 315.

These are the principles on which wills have been interpreted by courts. Further to carry into effect these princi-

ples, and give effect to testamentary dispositions which otherwise might fail, courts have uniformly held, that the words of a will may be transposed, stricken out, or words supplied, to effectuate the general intent of the testator.   Let the devise in this will be tested and interpreted by the light of these principles.

The qualifying words, "as they may think best in their discretion," are evidently thrown carelessly into the clause without regard to the proper collocation of words and phrases of the paragraph, and by that means what would otherwise be plain is rendered in a measure obscure to the cursory reader.   If these words be omitted, or by transposition be placed where propriety of language and expression requires, the meaning of the clause will at once be clear; so transposed, it will read as follows:  "The remainder of my real and personal estate I order my executors, as they may think best in their discretion, to sell or dispose of, or divide it equally among my two children, namely, Jonathan and Hannah."

It is manifest, that the testatrix intended to dispose of her whole estate; she did not intend to die intestate as to any part of it, and any construction having that effect will clearly contravene that intention.   It is equally clear, that she intended Jonathan and Hannah should have the whole of the residue of her estate to their own use; they were the special and sole objects of her bounty, and she would undoubtedly have been amazed if she had been told that she had not disposed of all her estate, but that the whole residuum would, under this clause, descend to her heirs at law, who, in this case, must have been collateral kindred.   No reason appears or can be shown on the face of this will, or by evidence outside of it, why she could have designed not to permit these lands to descend.   All parties to this will, have acted under the impression which its language conveys,—that these lands were devised to Jonathan and Hannah, to be divided by the executors between them, or sold as they should think best and most to their interest.

By reference to the language of this will, I cannot see a

reason to doubt the intention of the testatrix; that intention must prevail, and be carried into effect by the court. The intention of the testatrix, as disclosed by her will, is the paramount rule of construction; and where, conformable to law, that intent is to be effectuated, without regard to form or technical expressions, the law does not require apt words to give a fee-simple in lands, but such words only as indicate the intention of the testator.

The counsel for defendant earnestly contended, that the terms in the residuary clause, or sixth item of the will, "or dispose of as they may think best in their discretion," can only be construed to mean a conveyance after a sale, and was not intended to give discretionary power to the executors, either to "sell" or divide the land between Jonathan and Hannah, as they should think best, or most for their benefit. The word "sell," as it stands in that clause of the will, is synonymous with the word convey, and carries with it that intent, for land cannot be effectually sold without a conveyance. But after the word "sell," the testatrix has added these significant words: "or dispose of as they shall think best in their discretion." Are these words to be considered without meaning, and be disregarded as inoperative in any inquiry as to the intention of the testatrix respecting the estate she intended to pass to her two children, Jonathan and Hannah? I think not. Where a testator directs his executors to make sale of his lands, or other disposition of it, as they may think best, without any intimation that the disjunctive clause is intended to carry a limited estate, it must be construed as giving the executors discretionary power, either to sell and convey the land for a valuable consideration, or to divide it among the legatees named in the will; and such sale or division will pass the fee. "Courts have been uniform in their search for significant words used by a testator, which can justify or excuse them in giving a fee-simple when in their opinion the testator intended it." Now, if we apply these rules and principles to the will under consideration, we think that the

intention of the testatrix may be easily ascertained from the words which she has employed.

The objects of her bounty are certain ; the whole net proceeds of her estate were to be for the sole and exclusive benefit of her two children, Jonathan and Hannah. In this residuary clause, or sixth item of her will, there is no remainder over, no devise or bequest for a limited time.

The words are not the principal thing in a will, but the design of the testator; "and courts may and ought to construe the words found in the will in such manner as is most agreeable to the meaning of the testator, and may reject words that are insensible, or transpose them to meet the intention of the testator. The art of construing words in such manner as shall destroy the intent, may show the ingenuity of, but is very ill becoming, a judge." In the will before us, the intent of the mother to give all her property to her two children is plain, and that intent may be effectuated by construing the words " or dispose of as they may think best in their discretion," to mean a division between her two children, and that division should pass the fee, and it may be so construed without doing violence to its proper meaning, and will do no injustice to the defendant, for if he has any legal claim to the land in controversy he can enforce that claim as effectually against the plaintiff in this suit as he could against a grantee of the executors.

This action was brought to recover part of the land contained in the residuary clause, or sixth item of the will, against a person, so far as appears, having no title save possession, and not being an heir at law of Rachel Batson, the testatrix, nor in any wise connected with or benefited by her will.

The courts whose judgments are now under review, held that under this clause of the will the executors had a bare power to sell and divide the proceeds of sale between Jonathan and Hannah; that there was no intention expressed or apparent on the face of the will, that Jonathan and Hannah should, under any circumstances, have, by force of the will,

*the land itself;* that the land consequently descended to the
heirs at law, whoever they might be, there to rest until a
sale and conveyance, made under the alleged power of sale,
should divest it; that no sale or conveyance having been
made by the executors, the title still remains in the heirs at
law, and Jonathan Elle had no right to have possession of
the lands he claimed; that all the proceedings of the execu-
tors were null and void.

These conclusions cannot be reached by any legal mode
of interpreting the words of the devise as they stand in the
will. And the Supreme Court, in order to reach it, were
compelled to decide that the word "or," between the word
"sell," and the word "dispose," must be stricken out, and
the word "and," inserted; and further, that the word "it,"
must also be stricken out, and the words "the proceeds," be
inserted. The reason assigned for this strange measure
was, not that the clause was unintelligible as it stood, or
that the intent indicated by that choice and collection of
words was unlawful, or could not be carried into effect with-
out destroying that, or some other provision of the will, as
in former cases where courts have exercised this privilege,
but upon the ground that the testatrix meant to be so under-
stood, and, therefore, her language must be made to con-
form to her presumed intent. It is manifest that this mode
of interpretation is proceeding, not upon exposition, but
conjecture; the question in dispute is begged at the outset
of the case, and then the will is made to conform to the
result of this mode of alterations. If the devise as it stood
was unintelligible without alteration, the words of Horn-
blower, chief justice, in the case of *Den* v. *Humphreys*, 1
*Har.* 29, might be appropriately used; in that case, the
counsel sought to change the words of the will, to convert a
devise into a mere right of proceeds of sale. He remarks,
"The testator says nothing in the will about dividing the
*money or proceeds;* they are words supplied by the ingenuity
of counsel, to render the testator's language intelligible.
But since we must resort to construction and supply words,
why may we not adopt such as are more consistent with the

evident general intention of the testator." "To alter the language of a testator is evidently a strong measure, and one which in general is to be justified only by a clear explanatory context." 1 *Jarman on Wills*, 441. Chief Justice Ewing held the same doctrine in the case of *Den* v. *Crawford*, 3 *Halsted*, 97.

No case was cited, or alluded to, where words have been stricken out or inserted, for the purpose of defeating what otherwise would amount to a valid devise to a testator's acknowledged children, admitted to be the only objects he intended to provide for. When done in a case of necessity, it is done that the devise may stand, not to destroy it, for the benefit of the heir at law, whom it is the object of a will to cut off from his rights as heir. *Den on the Demise of Brown* v. *Mugway*, 3 *Green*, 330; *Nelson* v. *Combs*, 3 *Harrison*, 38; *Nevison* v. *Taylor*, 3 *Halsted*, 45.

Effect should be given in the construction of wills to all the words if possible, and it should be construed so that it may stand, not fall. In the case of *Den* v. *Crawford*, 3 *Halsted*, 97, Chief Justice Ewing adopts the language of Justice Buller, and says: "I agree that a testator may express his intentions by what words he pleases, and the court is so to expound his expressions that every word may stand, if possible. Altering the collection of words inartificially and carelessly put together stands upon different grounds from cutting out and inserting words, but no violence should be done to the language by either course; changing them is to form a new sentence for him to express a consistent intent. If the testatrix had, in the dictation of this devise, used the words "I order my executors to dispose of it, and divide the remainder of my real and personal estate equally between my two children, namely, Jonathan and Hannah," could any doubt be entertained of her intentions that they should have the land itself, not the mere proceeds of the sale of it, equally divided between them, and that they should hold it as tenants in common until a division? How does the case differ by the use of the additional words "or sell the same, as they may think best in their discretion."

And yet these are almost literally, and quite substantially, her words in this clause. This is the literal, grammatical meaning of the clause as it stands in the will. The disjunctive " or," separates the word " sell," from the words " dispose of and divide," and shows that the words were not intended to be synonymous; and this conclusion is strengthened and made clear by the use of the word " it," whose grammatical antecedent is " the remainder;" " or " is never made " and," unless in cases where " or " makes nonsense, and " and " is required to make sense. The obvious import of the clause is to direct the executors to divide the land equally between them; and empower them to sell the same, if they thought best to do so, to carry out the intention of benefiting Jonathan and Hannah most effectually. Perhaps the power of sale was given because a portion of this remainder was goods and chattels; and perhaps because it might be more convenient to sell lands in the possession of those holding them adversely, than to divide them and bring suit to recover possession. The superadded power of sale could not render a devise of the fee invalid, the estate remains a fee simple, liable to be defeated by the executors by the power of sale. *Den* v. *Humphreys*, 1 *Har.* 25; *Den* v. *Crawford*, 3 *Hal.* 102; *Casterton* v. *Sutherland*, 9 *Vesey* 445. The direction of the testatrix to divide these lands between Jonathan and Hannah is a clear expression of her intent, that they should have the lands themselves, not the mere proceeds of a sale of them. Nothing is left to implication. It is, as if she had directed the lands to be divided between them, without naming the persons to make division; the intent that they should have, is not obscured by pointing out the persons to divide. These words operate to devise the fee. Nothing more is necessary to make a valid devise of lands than an expression of the will of the testator, that the devisee should have the land; no set form of expressions is essential; the words give, devise, bequeath, are the more common forms of expressions, but any words, phrases, or sentence, of similar import, conveying to the mind the intent

to give, or that the devisee should have, are equally suffi-
cient. In *Marret* v. *Sly*, 2 *Siderfin* 95, the words, "I make
my cousin, Giles Birges, my sole heir and my executor,"
were held to constitute the cousin devisee in fee of testa-
tor's land.

In *Nelson* v. *Combs*, 3 *Harrison* 29, the words, "I give
and bequeath unto my daughter, Ann Butcher, one-half part
of the house and lot I now live in, (her mother having the
other part,) during her natural life, then, after her decease,
to bequeath to her son, Thomas Butcher, to him, his heirs,
and assigns forever; then after her mother's decease, Ann
Butcher *to have* the whole of it during her natural life,"
were held to give a fee to Thomas Butcher and Ann Butcher
by force of the words "to bequeath" and "to have." In
*Den* v. *Drew*, 2 *Green* 68, the words, "I do hereby *direct
and order*, that all the remainder of the rents, profits, and
residue of my estate, after the payment of my just debts,
be equally divided between my wife Jane, my son Samuel,
and my two grandchildren Sinneck and Jane," were held to
be a devise in fee of a four acre lot, a part of the remainder
of the estate.

That case is like the one now before the court, in all
respects, so far as the force of the devising words used is
concerned.

That was a devise of the remainder, consisting of real and
personal estate; there were no express words of gift; nothing
but a direction to divide the rents, profits, and residue; there
was even in that case some little doubt whether the words of
the will, by necessary implication, included real estate, it not
being expressly mentioned, and yet the court, by construction,
included it. What is there in principle to distinguish that
case from the present one? The only difference is in form,
in that, the persons to divide were not appointed, in this they
are; but that cannot alter the intent, it is only a difference in
mode in carrying it out. The intent to give appears as clearly
in the one as in the other.

In the case of *Drew* v. *Humphreys*, before cited, Chief
Justice HORNBLOWER says, "Where it is manifest from the

scope of the will that the testator intends to give lands, they will pass, though proper and apt words for that purpose are not used." Is there any reason why this will should not be construed so that the lessor of the plaintiff shall have the fee of the lands in controversy? Can any injury be done by such construction, or any object the testatrix had in view be frustrated? Neither of these questions can (I think) be answered in the affirmative.

But such a construction, the law would harmonize with the justice of the case, the title to these lands be put at rest, and the intention of the testatrix carried out.

No case was cited by the able and diligent counsel of the defendant, holding that a direction to divide land between A. and B. was not a devise of the fee to them, and it will be presumed that none such exists.

This construction of this devise is in conformity to the adjudicated cases in New Jersey, and does not disturb the rule laid down in the cases cited by defendant's counsel.

That where a bare power is given to executors to sell and divide the proceeds among a class of persons, that until a sale and conveyance, the fee descends to the heir at law, and is not in the persons entitled to the proceeds of sale, is a rule well settled, and should, as a rule of propriety, be adhered to. But there is no propriety in applying it to cases not clearly within its reach, and, last of all, in altering the phraseology of a will, in order to bring it within its influence; it is at best a technical rule, having its origin in feudal principles, and based on feudal reasons, to prevent an abeyance of the fee to the trust of the lord, and when pushed beyond its natural and well defined bounds, it becomes, true to its origin, not a protection to property, but an engine of injustice. Its application in the present case must be admitted to be unjust.

If the foregoing principles and reasoning be sound, then Jonathan Elle and Hannah Saunders, by force of the devise, became entitled to the fee of the land as tenants in common, and the plaintiff was entitled to recover at least the undivided half of the premises, and should not have been non-

suited. But if this be not so, and the devise did not pass the lands to them, yet at all events, for the reasons before mentioned, they gave the executors power *to divide* the lands between them, and this has been well and legally done by the deed of division. It is true, it has no proper words to convey a title, but it purports, on its face, to be an execution of the power to divide the remainder of the lands; it recites the power in terms; and professes to execute it.

It is a good execution of the power of division, and by force of it, if the fee had not already passed, it became vested in them in severalty. Chancellor Kent, in his commentaries, 4 *Kent*, 327, in discussing this subject of power, says: "The appointee, under a power, derives his title, not from the person exercising the power, but from the instrument by which the power of appointment was created; and further, he also says, that where the mode in which the power is to be executed is not defined, it may be executed by deed, or will, or simply by writing." It therefore seems clear, that nothing more is necessary, under a power, to divide, than to define the bounds of each share in writing, by the person executing the power, referring to the power, and professing to execute it. The act must unite with the intent. No deed of conveyance is necessary to pass the title, because that passes directly from the devisor to the beneficiary by force of the will, on the conditions being performed. An appointment is not a conveyance within the statute of frauds; it is a mere creature of the instrument creating the power, and regulating it by its provisions; a power to sell must be executed by a conveyance; a power to divide, by a division made in writing and properly authenticated. It was not questioned at the bar, but that the power of division had been properly executed, if it existed, nor that Jonathan and Hannah took the fee of the lands by force of the will, if the clause could be legally construed as a direction to divide the lands between them. Both points were, very properly and freely, conceded by the able counsel of defendant; and the whole case rested upon the single point, that there was no power or discretion given to divide

the lands, and that there was nothing but a bare power to sell, and divide the proceeds of sale.

Jonathan Elle was, therefore, entitled, under the will and deed, to the fee of the whole tract set off to him in the division. Let the judgment be reversed with the usual directions.

THE CHANCELLOR.—The plaintiff claims title to the premises in dispute through the will of Rachel Batson, deceased. The only question in controversy arises upon the construction of that will. The plaintiff claims under the following devise: " The remainder of my real and personal estate I order my executors to sell or dispose of, as they may think best in their discretion, and to divide it equally among my two children; namely, Jonathan and Hannah."

This devise vests no legal estate in Jonathan Elle.

The executors were clothed with a naked power of sale, or disposition, at their discretion, not coupled with any interest in the land. The proceeds of such sale or disposition, the executors were to divide between the plaintiff and his sister Hannah. The title did not pass by the will, but vested, immediately upon the death of the testatrix, in her heirs at law. That title can be divested in no way, except by the execution of the power conferred upon the executors.

The only questions, therefore, are,—has that power been exercised? and has the plaintiff, under that power, become invested with the title to the land?

The power is, that the executors shall sell or dispose of the said real estate as they may think best, at their discretion.

On behalf of the plaintiff it was insisted, that this power may be exercised, either by actual sale, or by a conveyance of the land directly to Jonathan Elle and Hannah Sanders, who are entitled, by the will, to the proceeds, or by a partition between them. The Supreme Court was of the opinion that the will conferred no power to make partition, and that the phrase sell *or* dispose of, is tantamount to sell *and* dispose of. I think the court right in this construction. If the phrase *dispose of*, is so construed as to confer upon the ex-

ecutors a distinct and different power of disposition than that of sale, by what rule of construction can you limit it to a sale and conveyance of the land to the persons who, by the will, are entitled to the proceeds of the land ?   The confidence which the testatrix reposed in the executors, is as to the mode and manner of sale, and referred to no other disposition of the property.   Whether a deed of bargain and sale to Jonathan Elle and Hannah Sanders would be a good execution of the power, is another question.

But if the will can bear the construction put upon it by the plaintiff's counsel, I do not think it will help the plaintiff's case.   The executors have made no disposition of the land, either by sale or otherwise.   A deed was executed between Jonathan Elle and wife of the one part, and Joseph Sanders and wife of the other part, by which a partition was made of the land between Jonathan Elle and Hannah Sanders.

The executors were no parties to this deed of partition, and as Jonathan Elle and Joseph Sanders could execute the power conferred upon them by the will, only in their capacity of executors, no deed could divest the heir of the title cast upon him by law, except it was executed by the appointees under the power in that capacity in which it was conferred upon them.

It is true, the court will overlook a mere formality in the execution of a power.   But the deed of the 1st December, 1846, was not intended by the parties as an execution of the power.   On the contrary, it is apparent on the face of that deed, that it was executed by the parties to it, because they did not suppose the execution of the power necessary, but under the impression that by the will they had some legal interest in the land itself, they adopted that as a mere mode of division.   The power, it is true, is recited in the deed, and so are other portions of the will ; but it is very evident that the recital was for the purpose of showing that Jonathan Elle and Hannah Sanders had an interest in the land in common ; and that by that deed it was the intention of the parties to sever that interest.   " The deed is no conveyance

of title, but a mere division, or partition of lands, the title to which is assumed to be already vested." I think the judgment of the Supreme Court should be affirmed.

*For Reversal*—Judges VALENTINE, ARROWSMITH, HUYLER, WILLS, and CORNELISON.

*For Affirmance*—THE CHANCELLOR, and Judges RISLEY and HAINES.

CITED *in Cent. R. R. Co.* v. *Moore,* 4 *Zab.* 837 ; *Bolles* v. *State Trust Co.,* 12 *C. E. Gr.* 310.